FILED

2008 FEB 26   PM 4: 00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____ _Om___

1   Frank J. Coughlin, SBN 164851
    Caitlyn M. Hobbs, SBN 215990
2   **COUGHLIN & CONFORTI**
    600 W. Santa Ana Blvd., Suite 202
3   Santa Ana, CA 92701
    (714) 835-5681 FAX (714) 835-6176
4   frank@cnllp.com

5   Attorneys for Plaintiffs and
    all others similarly situated

6

7                **UNITED STATES DISTRICT COURT**

8                **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 9   **JUANITA FALCK**, an individual; **STEVEN HILLMAN**, an individual; **EDWARD M. MURR, JR.**, an individual; and **MANUEL ACOSTA**, an individual; and each on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> **TENET HEALTHCARE CORPORATION**, a Nevada Corporation; **AHMC HEALTHCARE, INC.**, a California Corporation, **GEMW HEALTHCARE LP**, a Limited Partnership; **AHMC GREATER EL MONTE COMMUNITY HOSPITAL, LP**, a Limited Partnership, and **AHMC Garfield Medical Center LP**, a Limited Partnership, **and Does 1 through 10**, <br><br> Defendants. | CASE NO. CV06-4709 MMM (FFMx) <br><br> **SECOND AMENDED COMPLAINT IN COLLECTIVE ACTION AND CLASS ACTION FOR:** <br> 1)   **VIOLATION OF FLSA – FAILURE TO PAY OVERTIME** <br> 2)   **VIOLATION OF FLSA – FAILURE TO PAY OVERTIME** <br> 3)   **DECLARATORY RELIEF** <br> 4)   **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 ET SEQ.** <br> **(Jury Trial Demanded)** |

- 1 -

SECOND AMENDED COMPLAINT

# JURISDICTION AND VENUE

1)     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331.  Plaintiffs' claims arise under §§ 7 and 16 of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 207 et seq., including 207(j) and 216(b).  The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

2)     Venue is proper in the Central District of California under 28 U.S.C. § 1391(B) because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

3)     Two cases alleging unpaid o vertime based on the same pay plan described herein have been brought in state court for a class of persons different than the class of persons described in this action.   *See Falck v. Tenet Healthcare, Los Angeles Superior Court* , case number BC346944 and *Pagaduan v. Tenet Healthcare Corporation dba Fountain Valley Regional Hospital*, Orange County Court, case number 03CC00565.  However, the state cases are different from this federal case: The state cases cover only non-union employees.  That is, the propose d class in each state case does not include 12-hour shift employees who are subject to a collective bargaining agreement ("CBA") as described herein, specifically on or after the effective date of their respective collective bargaining agreements.  Thus, t his action covers the period from the effective date of any collective bargaining

SECOND AMENDED COMPLAINT

1  agreement in any unionized hospital owned and controlled by a Defendant in

2  California. Finally, unlike this federal action, the state cases neither contain

3  federal questions, nor do they implicate or involve interpretation of the

4  CBAs.

5       4)    Unless stated otherwise, all allegations in this complaint shall

6  pertain only to Defendants' unionized hospitals, specifically from the

7  effective date of any collective bargaining agreement in effect at each

8  unionized hospital.

9                    **NATURE OF ACTION AND PARTIES**

10      5)    This is an action for a declaratory judgment, damages,

11  liquidated damages, restitution, equitable relief, and attorney's fees pursuant

12  to various federal and state statutes, including 28 U.S.C . §§ 2201 and 2202,

13  the provisions of Section 16(b) of the Fair Labor Standards Act of 1938 as

14  amended (29 U.S.C. § 216(b)) (hereinafter "FLSA"), and finally, under

15  California's Unfair Competition Law, at Business and Professions Code

16  section 17200 et seq. (hereinafter "UCL").

17      6)    Plaintiffs seek relief on a collective and a class -wide basis

18  challenging Defendants' use of a pay plan, *infra*, designed to avoid payment

19  of overtime wages to their unionized 12 -hour shift employees. With respect

20  to the claims under the FLSA, this is an "opt-in" collective action under

21  Section 16(b) of the FLSA, 29 U.S.C. § 216(b). With respect to Plaintiffs'

SECOND AMENDED COMPLAINT

1  claims under California's UCL, Plaintiffs will seek class certification on

2  behalf of themselves and for all of those similarly situated.

3      7)     Plaintiff, Juanita Falck ("Falck") is registered as a nurse in

4  California, and she works in Los Angeles County, California.  At all times

5  relevant herein, Defendants employed Falck as a registered nurse regularly

6  scheduled to work 12-hour shifts in Los Angeles County, California.  At all

7  relevant times Falck was subject to the pay practice described herein and

8  was a member of a union or otherwise subject to the terms and conditions of

9  a collective bargaining agreement.  For purposes of asserting the FLSA

10  claims herein, Plaintiff has executed a written consent, which was filed with

11  the original complaint.

12     8)     Plaintiff, Steven Hillman ("Hillman") is licensed as a

13  respiratory therapist in California, and he works in Riverside County,

14  California at Desert Regional Medical Center.  At all times relevant herein,

15  Defendant Tenet Healthcare Corporation employed and continues presently

16  to employ Hillman as a respiratory therapist regularly scheduled to work 12-

17  hour shifts.  At all relevant times Hillman was subject to the pay practice

18  described herein and was a member of a union or otherwise subject to the

19  terms and conditions of a collective bargaining agreement.  For the purposes

20  of asserting the FLSA claims herein, Hillman has executed a written

21  consent, which is filed contemporaneously herewith.

- 4 -

SECOND AMENDED COMPLAINT

1    9)    Plaintiff, Edward M. Murr, Jr. ("Murr") is licensed as a

2    respiratory therapist in California, and he works in Riverside County,

3    California at Desert Regional Medical Center.  At all times relevant herein,

4    Defendant Tenet Healthcare Corporation employed and continues presently

5    to employ Murr as a respiratory therapist regularly scheduled to work 12 -

6    hour shifts.  At all relevant times Murr was subject to the pay practice

7    described herein and was a member of a union or otherwise subject to the

8    terms and conditions of a collective bargaining agreement.   For the purposes

9    of asserting the FLSA claims herein, Murr has executed a written consent,

10   which is filed contemporaneously herewith.

11   10)    Plaintiff, Manuel Acosta ("Acosta") is licensed as a respiratory

12   therapist in California, and he works in Riverside County, California at

13   Desert Regional Medical Center.  At all times relevant herein, Defendant

14   Tenet Healthcare Corporation employed and continues presently to employ

15   Acosta as a respiratory therapist regularly scheduled to work 12 -hour shifts.

16   At all relevant times Acosta was subject to the pay practice described herein

17   and was a member of a union or otherwise subject to the terms and

18   conditions of a collective bargaining  agreement.  For the purposes of

19   asserting the FLSA claims herein, Acosta has executed a written consent,

20   which is filed contemporaneously herewith.

21

SECOND AMENDED COMPLAINT

11)     Hereinafter, "Plaintiff" used in the singular or plural shall refer to Juanita Falck, Steven Hillman, Edward M. Murr, Jr., and Manuel Acosta.

12)     Defendant Tenet Healthcare Corporation ("Tenet"), is a Nevada corporation, doing business in Los Angeles County, California, and is a health care institution as that term is defined in 29 U.S.C. § 152(14), and is thus subject to 29 U.S.C. 203, specifically 203(s)(1)(B).   Within the class period, Tenet has employed union employees in certain California facilities that its owns and operates.

13)     Defendant AHMC Healthcare, Inc. ("AHMC Healthcare") is a California corporation, doing business in Los Angeles County, California, and is a health care institution as that term is defined in 29 U.S.C. § 152(14), and is thus subject to 29 U.S.C. 203, specifically 203(s)(1)(B).   AHMC Healthcare is the General Partner for GEMW Healthcare LP.

14)     Defendant GEMW Healthcare LP. is a California limited partnership doing business in Los Angeles County, California, and is a health care institution as that term is defined in 29 U.S.C. § 152(14), and is thus subject to 29 U.S.C. 203, specifically 203(s)(1)(B) and is the General Partner for Defendant AHMC Greater El Monte Community Hospital LP and Defendant AHMC Garfield Medical Center LP.

15)     Defendant AHMC Greater El Monte Community Hospital LP ("El Monte") is a California limited partnership doing business in Los

SECOND AMENDED COMPLAINT

1   Angeles County, California, and is a health care institution as that term is

2   defined in 29 U.S.C. § 152(14), and is thus subject to 29 U.S.C. 203,

3   specifically 203(s)(1)(B).

4          16)    Defendant AHMC Garfield Medical Center LP ("Garfield") is a

5   California limited partnership doing business in Los Angeles County,

6   California, and is a health care institution as that term is defined in 29 U.S.C.

7   § 152(14), and is thus subject to 29 U.S.C. 203, specifically 203(s)(1)(B).

8          17)    Hereinafter, "AHMC" shall refer to AHMC Healthcare,

9   GEMW Healthcare LP, El Monte and Garfield.

10   Hereinafter, "Defendant" used in the singular or plural shall refer to Tenet,

11   AHMC Healthcare, GEMW Healthcare LP, AHMC Garfield Medical Center

12   LP and AHMC Greater El Monte Community Hospital LP.

13          18)    Upon information and belief, Tenet owns or controls various

14   subsidiary unionized hospitals and healthcare facilities in California

15   (collectively referred to herein as "Tenet Hospitals").  For example, Tenet

16   owned and controlled Greater El Monte Community Hospital ("El Monte

17   Hospital") and Garfield Medical Center ("Garfield Hospital").    Tenet

18   maintains or maintained control over all aspects of all of its unionized

19   hospitals, which included the right to hire and fire employees, the right to

20   supervise work schedules and conditions, the right to determine payroll

21   practices and policies, the right to determine the rate and method of wage

- 7 -

SECOND AMENDED COMPLAINT

1  payments, and the right to control human resources.  Tenet also controlled

2  and maintained employment records.  Therefore, Tenet is responsible for all

3  actions stated herein, including as the direct employer, and under theories of

4  joint liability, like agency and joint employer liability.

5    19) The true names and capacities, whether individual, corporate,

6  associate or otherwise, of defendants DOES 1 through 10, inclusive, are

7  unknown to PLAINTIFFS at this time, and PLAINTIFFS, therefore, sue said

8  defendants by such fictitious names.  PLAINTIFFS will ask leave of Court

9  to amend this Complaint when the same shall have been ascertained.

10    20) Upon information and belief, in approximately November 2004,

11  Tenet sold two of its unionized hospitals to AHMC Healthcare, specifically

12  El Monte Hospital and Garfield Hospital.  Since this acquisition, AHMC

13  Healthcare has owned and operated El Monte Hospital and Garfield

14  Hospital.  Moreover, after acquisition, AHMC adopted and continued to use

15  the pay plan, described below, which denies any overtime wages to its 12 -

16  hour shift employees.

17    21) AHMC Healthcare maintains control over all aspects of all of

18  its unionized hospitals, which includes the right to hire and fire employees,

19  the right to supervise work schedules and conditions, the right to determine

20  payroll practices and policies, the right to determine the rate and method of

21  wage payments, and the right to control human resources.  Upon information

SECOND AMENDED COMPLAINT

1   and belief, AHMC Healthcare also controlled and maintained employment

2   records.   Therefore, AHMC Healthcare is responsible for all actions stated

3   herein, including as the direct employer of AHMC employees, and under

4   theories of joint liability, like agency and joint employer liability.

5       22)    Defendants' unionized 12-hour shift employees, or the putative

6   class, have been members of labor organizations as that term is defined in 29

7   U.S.C. section 152(5) and as defined in Section 2(5) of the NLRA, including

8   Service Employees International Union, Local 121 RN ("LOCAL 121") and

9   other unions, and are subject to the terms and conditions of their respective

10  Collective Bargaining Agreements ("CBAs").

11      23)    Upon information and belief, by 2004, Tenet and the subject

12  unions executed CBAs for various Tenet Hospitals, more specifically

13  according to proof at trial, but including and not limited to both  El Monte

14  Hospital and Garfield Hospital.

15      24)    Certain identifiable 12-hour shift employees employed by

16  AHMC since AHMC Healthcare acquired El Monte Hospital and Garfield

17  Hospital have been members of unions, or at least subject to the terms and

18  conditions of their respective CBAs.

19      25)    Plaintiff Falck worked as a 12-hour shift employee at El Monte

20  Hospital while it was owned and operated by Tenet, and then, after

21  November 2004, while it was owned and operated by AHMC.   At all

SECOND AMENDED COMPLAINT

1  relevant times Falck was subject to the pay practice described herein.

2       26)  Plaintiffs Hillman, Murr and Acosta worked and continue to

3  work as 12-hour shift employees at Desert Regional Medical Center while it

4  is owned and operated by Tenet.  At all relevant times Hillman, Murr and

5  Acosta were subject to the pay practice described herein.

6       27)  Plaintiffs and those similarly situated have been membe rs of

7  unions operated at the facilities since on or before 2004, subject to proof at

8  trial.

9       28)  Since on or before 2004, Defendants employed other 12 -hour

10 shift employees in addition to Plaintiffs, who are designated herein as those

11 "similarly situated" or "cl ass members."  Hereinafter whenever the term

12 "similarly situated" is used, it shall mean 12 -hour shift employees who were

13 employed by Defendants at any time from the effective date of any

14 collective bargaining agreements in effect at Defendants' unionized

15 hospitals, up to and including the date of trial, who were subject to a CBA

16 and who were also subject to the pay plan.

17                    **GENERAL ALLEGATIONS**

18      29)  Upon information and belief, at some time in the 1990s,

19 Tenet adopted a 14-day workweek in accordance with 29 U.S.C. § 207(j).

20 Therefore, under section 207, Tenet is required to pay overtime to Plaintiffs,

21 and those similarly situated, for work in excess of eight hours in any

– 10 –

workday and in excess of eighty hours in a workweek of 14 days.   After purchasing El Monte Hospital and Garfield Hospital, AHMC Healthcare inherited and continued to use a 14-day workweek in accordance with 29 U.S.C. 207(j).

30)   The terms, conditions and other language of the CBAs executed at the unionized hospitals owned and operated by Tenet or by AHMC do not exempt this matter from the jurisdiction and overtime requirements of the FLSA, because the subject CBAs do not comport to the express language of 29 U.S.C.§ 207 (b)(1).

31)   Upon information and belief, at some time in the late 1990s, in all of its California hospitals and certain medical centers, Tenet devised and instituted a pay plan ("pay plan" or "scheme") that was artificial and unrealistic.  The pay plan operates as follows:

a.   Before the implementation of the pay plan, Tenet paid its 12-hour shift employees an hourly rate called the "Straight Time Hourly Rate." Before January 1, 2000, Tenet paid Plaintiffs and those similarly situated straight time for hours 1 to 12 in a shift.  After the implementation of the pay plan, it continued to pay Plaintiffs and the those similarly situated an amount equal to the Straight Time Hourly Rate for all purposes, except the calculation of overtime.   For example, when members of the putative class work equal to or less

SECOND AMENDED COMPLAINT

than 8 hours in a shift, Defendants pay class members an hourly rate that is equal to the Straight Time Hourly Rate. Thus, the Straight Time Hourly Rate is the rate of pay that Tenet pays both Plaintiffs and the class members for non-overtime hours.

b.   At all times relevant herein, the Straight Time Hourly Rate is an hourly rate of pay Defendants obtain from market surveys of the hourly rates being paid by hospitals in their immediate geographic location. Therefore, Defendants set the Straight Time Hourly Rate based on their understanding of market rates. Defendants used and continue to use the Straight Time Hourly Rate for purposes of recruiting and retaining qualified employees who make up the class members.

c.   Moreover, at all times relevant herein, Defendants paid the class members an hourly rate equal to the Straight Time Hourly Rate for raises, benefits and other work related compensation, such as insurance, vacation, and personal time off.

d.   Moreover, at all times relevant herein, the Straight Time Hourly Rate was the rate of pay that was used to calculate the double time pay that Defendants paid to Plaintiffs and the class members for hours of work in excess of 12 hours in a shift.

e.   However, at all times relevant herein, for purposes of

SECOND AMENDED COMPLAINT

1    overtime calculations only, that is, when Plaintiffs or the class
2    members work shifts between 8 and 12 hours, including a full 12 hour
3    shift, Defendants did not use the Straight Time Hourly Rate to
4    calculate overtime wages for the class members.  Instead, Defendants
5    utilize a payroll scheme that employs various artificial and unrealistic
6    payroll formulas and devices to avoid payment of any overtime to the
7    class members.   The specifics of the scheme will be subject to proof
8    at trial.  However, at all times relevant herein, the pay plan general ly
9    worked as follows:

10          f.      First, for purposes of calculating overtime for the class
11    members, Defendants purport to split the Straight Time Hourly Rate
12    into two components: 1) a lower artificial component (the
13    "ARTIFICIAL RATE"), which equals roughly 85 percent of the
14    Straight Time Hourly Rate, and 2) an equivalency or differential or
15    bonus rate (the "DIFFERENTIAL RATE"), which equals roughly 15
16    percent of the Straight Time Hourly Rate.  For each member of the
17    class, the ARTIFICIAL RATE plus DIFFERENTIAL RATE equals
18    the Straight Time Hourly Rate.  Any time Plaintiffs or class members
19    work overtime, Defendants first calculate wages, including overtime
20    wages, on the lower ARTIFICIAL RATE, rather than calculating
21    overtime on the Straight Time Hourly Rate.  In doing this, Defendants

SECOND AMENDED COMPLAINT

1    guarantee that members of the class always receive an hourly rate of

2    pay equal to their Straight Time Hourly Rate, without the additional

3    overtime penalty required by overtime law.

4        g.    Moreover, as part of the pay plan, Defendants pay

5    members of the class a DIFFERENTIAL RATE when class members

6    work from 8 up to 12 hours.    Defendants pay amounts of the

7    DIFFERENTIAL RATE in inverse correlation with the number of

8    overtime hours worked by the class members.    Thus, Plaintiffs and

9    the class are effectively paid a higher hourly rate for non-overtime

10    shifts (such as an 8 hour shift) and a lower hourly rate when they work

11    an overtime shift (such as a 12-hour shift).    Because of the graduated

12    use of the DIFFERENTIAL RATE, the more overtime Plaintiffs and

13    the class work, the lower the hourly rate they are actually paid.

14    Through this methodology, Defendants purport to pay members of the

15    class up to five (5) different hourly rates of pay between for 8, 9, 10,

16    11 and 12-hour shifts.    The ARTIFICIAL RATE, and the graduated

17    payments of the DIFFERENTIAL RATE, are intended to ensure that

18    members of the class in effect always receive the Straight Time

19    Hourly Rate, even for overtime hours, and therefore any fluctuations

20    in the rate of pay are based solely on the amount of overtime worked

21    by the class.    In reality, the entire SCHEME is used by Defendants to

SECOND AMENDED COMPLAINT

1    avoid the overtime penalty for the entire class.

2         32)    For Plaintiffs and all members of the CLASS, OVERTIME

3    should have been calculated at 1.5 times the REGULAR RATE, which

4    should have been no less than the rate of pay that Defendants paid for a non -

5    overtime, eight (8) hour shift (which is a rate equal to the Straight Time

6    Hourly Rate).  Moreover, it was artificial and unrealistic for Defendants to

7    purport to split the Straight Time Hourly Rate into separate components for

8    the calculation of overtime; and it was also artificial and unrealistic to make

9    payments to the class of the DIFFERENTIAL RATE in amounts that were

10   in inverse correlation to the amount of ove rtime worked.

11        33)    Defendants' pay plan is artificial and unrealistic, and violates

12   well-established federal laws and regulations, and was used specifically to

13   avoid the costs of the overtime law.

14        34)    Thereafter, various Tenet hospitals unionized, including El

15   Monte Hospital and Garfield Hospital.

16        35)    Tenet's unionized hospitals continued to utilize this same pay

17   plan after the effective dates of respective CBAs at their unionized hospitals.

18   Moreover, after AHMC Healthcare acquired El Monte Hospital and Garfield

19   Hospital, AHMC continued to utilize the pay plan with both Falck and those

20   similarly situated.

21        36)    Because certain hospitals had unionized and had adopted

SECOND AMENDED COMPLAINT

1  CBAs, under California overtime laws, Defendants were no longer required

2  to pay overtime wages to Plaintiffs and those similarly situated.  However,

3  under the FLSA, Defendants were still required to pay Plaintiffs and those

4  similarly situated overtime wages.

5      37)   At Defendants' unionized hospitals, overtime compensation for

6  Plaintiffs and those similarly situated  should be calculated at one and one-

7  half times the regular rate of pay, which should have been no less than the

8  rate of pay that Defendants paid for non-overtime work of eight (8) or fewer

9  hours.  Defendants failed and still fail to do this at their unionized hospitals.

10     38)   Therefore, through the use of their pay plan, Defendants have

11  avoided and still avoid paying Plaintiffs and those similarly situated any

12  overtime premium whatsoever for up to 12 hours of work per day in its

13  unionized hospitals.

14     39)   Moreover, through the use of the pay plan at their unionized

15  hospitals, Defendants have avoided and still avoid paying Plaintiffs and

16  those similarly situated any overtime premium for work in excess of 80

17  hours in a 14-day period.

18     40)   The policy of overtime compensation  laws has historically

19  served the dual purposes of inducing the employer to reduce the hours of

20  work and to employ more individual workers, and of compensating the

21  employees for the burden of a long workweek.  Through the use of the pay

SECOND AMENDED COMPLAINT

1  plan at their unionized hospitals, Defendants completely circumvent the

2  historic policies of the overtime laws.

3      41)   Defendants have used their pay plan knowingly and willfully at

4  their unionized hospitals, and, upon information and belief, Defendants used

5  their pay plan specifically to avoid overtime requirements of federal law.

6  The use of their pay plan is neither reasonable nor in good faith, in part

7  because using a higher hourly rate for non-overtime shifts than for overtime

8  shifts is prohibited under long-standing U.S. Supreme Court authority,

9  dating back to the 1940s, as well as by long-standing federal regulations.

10     42)   Other specifics of the pay plan, including other indicators of

11  artificiality, will be subject to discovery, and then proof at trial.

12     43)   Plaintiffs and all those who are similarly situated at Defendants'

13  unionized hospitals are entitled to both unpaid overtime wages under the

14  FLSA and liquidated damages in the amount of their unpaid overtime.

15     44)   Plaintiffs and all others similarly situated contend they have no

16  plain, adequate or complete remedy at law.  This suit is their sole means of

17  securing adequate redress.  Plaintiffs and all others similarly situated are

18  now suffering and will continue to suffer irreparable injury from

19  Defendants' unlawful acts, policies, practices and procedures unless they are

20  enjoined by this Court.

21     45)   Because Defendants' actions violate federal law, those actions

SECOND AMENDED COMPLAINT

1  also violate California's UCL.  Under the UCL, Plaintiffs and those similarly

2  situated are entitled to restitution of their unpaid overtime and other

3  equitable relief, including injunctive relief, and further relief deemed

4  appropriate by this Court.

5  ### COLLECTIVE ACTION ALLEGATIONS

6      46)   Plaintiffs' FLSA claim is brought under Section 16(b) of the

7  FLSA, 29 U.S.C. § 216(b), as an "opt-in" collective action (hereinafter "the

8  FLSA Action").

9      47)   The First Claim for Relief is stated under the FLSA action

10  against Tenet, and is brought on behalf of any person who meets the

11  following conditions: 1) he or she was employed by Tenet as a unionized 12 -

12  hour shift employee at any time after the effective date of any CBA in any

13  Tenet Hospital in California; 2) he or she was a member of a union or

14  subject to the CBA at his or her respective unionized hospital; 3) he or she

15  was subject to the pay plan; and 4) he or she 'opts in' to the FLSA action by

16  executing a written consent to become a party to this lawsuit.  (29 U.S.C. §

17  216(b)).

18      48)   The Second Claim for Relief is stated under the FLSA action

19  against AHMC, and is brought on behalf of any person who meets the

20  following conditions: 1) he or she was employed by AHMC as a unionized

21  12-hour shift employee at any time after the effective date of any CBA in

1  any of AHMC's unionized hospitals in California; 2) he or she was a

2  member of a union or subject to the CBA at his or her respective unionized

3  hospital; 3) he or she was subject to the pay plan; and 4) he or she 'opts in'

4  to the FLSA action by executing a written consent to become a party to this

5  lawsuit.  (29 U.S.C. § 216(b)).

6  **CLASS ACTION ALLEGATIONS**

7      49)    With respect to her Fourth Claim for Relief under the UCL,

8  Plaintiffs also seek restitution of unpaid overtime wages on their own behalf,

9  and on behalf of all those similarly situated, under applicable Federal and

10  State laws as a conventional "opt-out" class action under Rule 23 of the

11  Federal Rules of Civil Procedure.

12      50)    The proposed class definitions for this Class Action are as

13  follows:

14      Subclass A:. All registered nurses employed by either Tenet or

15  AHMC who were (i) scheduled to work fourteen-day workweeks under 29 U.S.C. 207(j) of the FLSA, (ii) were subject to the California Differential pay plan during any pay

16  period from July 27, 2002 to the present, and (iii) were members of unions or otherwise subject to the terms and

17  conditions of any collective bargaining agreement.

18      Subclass B: All Tenet employees other than registered nurses who were (i) scheduled to work fourteen-day workweeks under

19  29 U.S.C. 207(j) of the FLSA, (ii) were subject to the California Differential pay plan during any pay period from February 27,

20  2003 to the present, and (iii) were members of unions or otherwise subject to the terms and conditions of any collective

21  bargaining agreement.  This subclass has a statute of limitations

SECOND AMENDED COMPLAINT

1  effective from the date of the filing of the First Amended
Complaint.

2
Subclass C:   All AHMC employees other than registered
3  nurses, for the purposes of FLSA opt-in only, who were (i)
scheduled to work fourteen-day workweeks under 29 U.S.C.
4  207(j) of the FLSA, (ii) were subject to the California
Differential pay plan during any pay period from February 27,
5  2003 to the present, and (iii) were members of unions or
otherwise subject to the terms and conditions of any collective
6  bargaining agreement. This subclass has a statute of limitations
effective from the date of the filing of the First Amended
7  Complaint.

8       In addition, Plaintiffs may further request subclassing, according to

9  the Court's discretion, should it be required to increase case efficiency and

manageability.

10      51)   This Class Action is based upon the same conduct engaged in

11  by Defendants, consisting of their failure to pay overtime to the above-

12  identified employees, all of whom were entitled to overtime under the FLSA

13  and the UCL. This Class Action seeks to recover unpaid (i) overtime

14  compensation owed to the put ative Class members, (ii) reasonable attorneys'

15  fees and costs as provided for by applicable federal or state law, including

16  common fund and private attorney general theories, (iii) prejudgment and

17  post-judgment interest as allowed, and (iv) a declaratory judgment that the

18  pay plan is illegal under the FLSA.

19      52)   Members of the putative class are so numerous that joinder of

20  all such members is impracticable. Although the exact size of the putative

21  class is unknown, it is believed and alleged that the number of persons in the

- 20 -

SECOND AMENDED COMPLAINT

1  class is in the thousands.

2      53)    There are common questions of law and fact applicable to the

3  putative class with respect to the liability issues, relief issues and anticipated

4  affirmative defenses.  The common questions include whether Defenda nts'

5  pay plan was illegal, and whether Plaintiff, and those similarly situated, were

6  denied overtime wages because of the pay plan.

7      54)    Like the rest of the putative class, Plaintiffs have been subject

8  to Defendants' pay plan because they are    12 -hour shift employees who

9  have been employed by Defendants after the effective date of the CBA.

10  They are also  members of a union.  Plaintiffs' claims are therefore typical of

11  the claims of the members of the proposed class.

12      55)    Plaintiffs will fairly and adequately prot ect the interests of the

13  putative class.  They have no conflicts with the putative class members, and

14  their counsel possesses the requisite resources and abilities to prosecute this

15  case as a class action.

16      56)    The prosecution of separate actions by putative c lass members

17  would create a risk of inconsistent or varying adjudications with respect to

18  individual members, that would establish incompatible standards of conduct

19  for Defendants.

20      57)    The prosecution of separate actions by putative class members

21  would create a risk of adjudications with respect to individual members that

SECOND AMENDED COMPLAINT

1    would, as a practical matter, be dispositive of the interests of the other

2    members not parties to the adjudications or substantially impair or impede

3    their ability to protect their interests.

4        58)   The questions of law and fact common to the putative class

5    members predominate over any questions affecting only individual class

6    members, and a class action is superior to other available methods for the

7    fair and efficient adjudication of the controversy.   More specifically,

8    members of the proposed Class have little or no interest in individually

9    controlling the prosecution of separate actions.  It is the Plaintiffs' desire to

10    concentrate the litigation of the claims in this Court.

11        59)   This action is manageable as a class action because, compared

12    to any other method such as individual interventions or the consolidation of

13    individual actions, a class action is more fair and efficient.

### FIRST CLAIM FOR RELIEF: VIOLATION OF THE FAIR LABOR STANDARDS ACTION OF 1938
**Plaintiffs and those similarly situated who opt-in against Tenet**

17        60)      Plaintiffs reassert and reallege the allegations set forth in

18    the previous paragraphs of this complaint.

19        61)      The FLSA regulates, among other things, the payment of

20    overtime by employers whose employees are engaged in commerce, or

21    engaged in the production of goods for commerce, or employed in an

SECOND AMENDED COMPLAINT

1   enterprise engaged in commerce or in the production of goods for

2   commerce. 29 U.S.C. § 207. Tenet is, and was, subject to the overtime pay

3   requirements of the FLSA on the basis it is an enterprise engaged in

4   commerce and its employees are engaged in commerce.

5       62)    Under the facts alleged herein, Section 7 of the FLSA, 29

6   U.S.C. § 207(j), requires Defendants to pay Plaintiffs and those similarly

7   situated, who work longer than eight (8) hours in a workday or eighty (80)

8   hours in a workweek of 14 days, one and one-half times the employee's

9   regular rate of pay for the hours worked 1) in the workday in excess of eight

10  (8) hours or 2) in the workweek of 14 days in excess of eighty (80) hours.

11  Tenet violated the FLSA through its use of the pay plan, including by paying

12  a lower hourly rate of pay for overtime hours than it pays for non-overtime

13  hours.

14      63)    The FLSA employees are entitled to damages equal to the

15  amount of overtime premium pay within the three years preceding the filing

16  of this complaint, plus periods of equitable tolling. Tenet's failure to pay

17  overtime pay to FLSA employees was "willful" since Tenet did not act in

18  good faith in failing to pay proper overtime, and had no reason to believe

19  that the failure to do so was not a violation of the FLSA. Accordingly, the

20  FLSA employees are entitled to an award of liquidated damages in a sum

21  equal to the amount of unpaid overtime as described above, pursuant to

SECOND AMENDED COMPLAINT

1   Section 16(b) of the FLSA. Finally, even if the Court does not find that

2   Tenet acted willfully in failing to pay overtime, the FLSA employees are

3   entitled to an award of prejudgment interest at the applicable legal rate.

4   Reasonable attorneys' fees and costs, pursuant to Section 16(b) of the FLSA,

5   29 U.S.C. § 216(b), should also be awarded.

6   **SECOND CLAIM FOR RELIEF: VIOLATION OF**
**THE FAIR LABOR STANDARDS ACTION OF 1938**

7   **Plaintiffs and those similarly situated who opt-in against AHMC**

8   64)   Plaintiffs reassert and reallege the allegations set forth in the

9   previous paragraphs of this complaint.

10   65)   The FLSA regulates, among other things, the payment of

11   overtime pay by employers whose employees are engaged in commerce, or

12   engaged in the production of goods for commerce, or employed in an

13   enterprise engaged in commerce or in the production of goods for

14   commerce. 29 U.S.C. § 207. AHMC is, and was, subject to the overtime pay

15   requirements of the FLSA on the basis it is an enterprise engaged in

16   commerce and its employees are engaged in commerce.

17   66)   Under the facts alleged herein, Section 7 of the FLSA, 29

18   U.S.C. § 207(j), requires Defendants to pay Plaintiffs and those similarly

19   situated, who work longer than eight (8) hours in a workday or eighty (80)

20   hours in a workweek of 14 days, one and one-half times the employee's

21   regular rate of pay for the hours worked 1) in the workday in excess of eight

SECOND AMENDED COMPLAINT

1  (8) hours or 2) in the workweek of 14 days in excess of eighty (80) hours.

2  AHMC violated the FLSA through its use of the pay plan, specifically, by

3  paying a lower hourly rate of pay for overtime hours than it pays for non-

4  overtime hours.

5        67)  The FLSA employees are entitled to damages equal to the

6  amount of overtime premium pay within the three years preceding the filing

7  of this complaint, plus periods of equitable tolling.  AHMC's failure to pay

8  overtime to FLSA employees was "willful" since AHMC did not act in good

9  faith in failing to pay proper overtime, and had no reason to believe that its

10  failure to do so was not a violation of the FLSA.  Accordingly, the FLSA

11  employees are entitled to an award of liquidated damages in an amount

12  equal to the amount of unpaid overtime pay described above, pursuant to

13  Section 16(b) of the FLSA. Finally, even if the Court does not find that

14  AHMC acted willfully in failing to pay overtime pay, the FLSA employees

15  are entitled to an award of prejudgment interest at the applicable legal rate.

16  Reasonable attorneys' fees and costs, pursuant to Section 16(b) of the FLSA,

17  29 U.S.C. § 216(b), should also be awarded.

18        **THIRD CLAIM FOR RELIEF: DECLARATORY RELIEF**
      **Plaintiffs and those similarly situated against all Defendants**

19

20        68)  Plaintiffs reassert and reallege the allegations set forth in the

21  previous paragraphs of this complaint.

SECOND AMENDED COMPLAINT

69)     Plaintiffs allege the pay plan, discussed *supra*, is an artifice and a sham and is intended to deprive Plaintiffs, and all others similarly situated, of the overtime premium due under the FLSA.

70)     Upon information and belief, Defendants have alleged that their pay plan is not artificial, and that they properly pay their unionized 12-hour shift employees overtime as required by the FLSA.

71)     Thus, an actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties based on the above allegations.

72)     Plaintiffs desire a judicial determination of their rights and duties and the rights and duties of those who are similarly situated, and a declaration as to whether the pay plan, as described more fully above, is illegal.

## FOURTH CLAIM FOR RELIEF: CLASS ACTION FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200
### Plaintiffs and those similarly situated against all Defendants

73)     Plaintiffs repeat and re-allege the allegations set forth above as if each were set forth in full herein.

### Count One: Subclass A & B Against Tenet

74)     On the basis Tenet's actions violate federal law, those actions also violate California's UCL, including the UCL's prohibition against

1   unlawful and unfair business practices.  Under the UCL, Plaintiffs, and those

2   similarly situated, are entitled to restitution of their unpaid overtime, and

3   equitable relief, including injunctive relief, as deemed appropriate by this

4   Court.

5        75)   Plaintiffs and those similarly situated contend that Tenet did not

6   pay overtime as required under the FLSA, and that she and those similarly

7   situated are entitled to restitution, as well as to any equitable relief deemed

8   appropriate by this Court, including injunctive relief.

9   **Count Two: Subclass A Against AHMC**

10       76)   On the basis AHMC Healthcare's actions violate federal law,

11  those actions also violate California's UCL, including the UCL's prohibition

12  against unlawful and unfair business practices.  Under the UCL, Plaintiffs,

13  and those similarly situated, are entitled to restitution of their unpaid

14  overtime, and equitable relief, including injunctive relief, as deemed

15  appropriate by this Court.

16       77)   Plaintiffs and those similarly situated contend that AHMC

17  Healthcare did not pay overtime as required under the FLSA, and that they

18  are entitled to restitution, as well as any equitable relief deemed appropriate

19  by this Court, including injunctive relief.

20  **PRAYER**

21       A.   For   compensatory   damages,   including   interest,   against

- 27 -

SECOND AMENDED COMPLAINT

1  Defendants, to be paid to all FLSA employees, including all overtime pay

2  owed to all FLSA employees under the FLSA, in an amount to be

3  ascertained from records and other evidence;

4      B.    For liquidated damages against Defendants, to be paid to all

5  FLSA employees under Section 16(b) of the FLSA, in an amount to be

6  ascertained from records and other evidence;

7      C.    For restitution against Defendants, to be paid to the UCL Class,

8  including all overtime pay owed to the UCL Class and the class

9  representative, in an amount to be ascertained from records and other

10  evidence;

11      D.    For attorneys' fees, costs and disbursements, as allowed by

12  Section 16(b) of the FLSA and applicable State and Federal law; and

13      E.    For an Order awarding Plaintiffs pre-judgment and post-

14  judgment interest at the rate allowed by law;

15      F.    For a declaratory judgment declaring that Defendants pay plan

16  violates the statutory obligations under the FLSA;

17      G.    For a permanent injunction restraining and preventing

18  Defendants from withholding the compensation that is due the Plaintiffs and

19  from further violating their rights under Federal and State law;

20      H.    For any other and further relief the Court may deem just or

21  equitable, including relief to which Plaintiffs, and those similarly situated,

1    are entitled to under the allegations of this complaint.

2    **<u>DEMAND FOR JURY TRIAL</u>**

3        Plaintiffs hereby demands a jury trial as provided by Rule 38(b) of the

4    Federal Rules of Civil Procedure.

5

6    DATED: February 26, 2008        **COUGHLIN & CONFORTI**

7

8

                             Caitlyn M. Hobbs

9

10

11

12

13

14

15

16

17

18

19

20

21

SECOND AMENDED COMPLAINT

**PROOF OF SERVICE**
(Declaration)
(C.C.P. § 1013(a) and §2015.5)

STATE OF CALIFORNIA }
                    }ss.
COUNTY OF ORANGE }

I, the undersigned, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 600 W. Santa Ana Blvd., Suite 202, Santa Ana, California 92701.

On February 26, 2008, I served the following documents:

**PLAINTIFFS': SECOND AMENDED COMPLAINT;**
**CONSENT TO BE THE PLAINTIFF AND "OPT IN" IN ACCORDANCE WITH 29 U.S.C. §216(b) FOR EDWARD M. MURR;**
**CONSENT TO BE THE PLAINTIFF AND "OPT IN" IN ACCORDANCE WITH 29 U.S.C. §216(b) FOR STEVEN HILLMAN;**
**CONSENT TO BE THE PLAINTIFF AND "OPT IN" IN ACCORDANCE WITH 29 U.S.C. §216(b) FOR MANUEL U. ACOSTA**

On the interested parties in the action by placing a true and correct copy of each document thereof, enclosed in a sealed envelope, addressed as follows:

Jeffrey Fuchsman                          Michele L. Maryott
Ballard Rosenberg Golper & Savitt         Gibson, Dunn & Crutcher LLP
10 Universal City Plz Fl 16               3161 Michelson Drive
Universal City, CA 91608-1063             Irvine, CA 92612-4412

☐      **By Mail:** I am readily familiar with Law Offices Coughlin & Conforti's business practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence is deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Santa Ana, California.

☐      **By Personal Service:** I delivered such document(s) by hand at the above listed addresses.

☒      **By Overnight Courier:** I caused the above-referenced document(s) to be delivered to an overnight courier service (Federal Express) for delivery to the above address(es).

☐      **By E-mail:** I caused the above-referenced document(s) to be delivered by email to the following addresses: JFUCHSMAN@brgslaw.com

☐      **By Facsimile Machine:** I caused the above-referenced document(s) to be transmitted to the above-named persons at the following telephone number(s): 818-985-8167 and 949-475-4641. Attached to this declaration is a "FAX Confirmation Report" confirming the status of transmission.

☒      **Federal:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 26, 2008, at Santa Ana, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Amiee Fukumoto